**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SEAN GALLAGHER, PIAGET VENTUS, NICOLE ASCENSIO, IANOS ORTEGA, individually on behalf of themselves and all others similarly situated,<br><br>                  Plaintiffs,<br><br>v.<br><br>NATIONAL RESTAURANT ASSOCIATION SOLUTIONS, LLC; NATIONAL RESTAURANT ASSOCIATION D/B/A SERVSAFE and other related entities and individuals,<br><br>                  Defendant. | Case No. 23-cv-435 (LGS)<br><br><br>**AMENDED CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff SEAN GALLAGHER, PIAGET VENTUS, NICOLE ASCENSIO, IANOS ORTEGA (hereinafter "Plaintiffs"), individually and on behalf of all others similarly situated, along with John Does from each state, by their attorneys, Leeds Brown Law, P.C., allege the following upon information and belief, except for those allegations pertaining to Plaintiffs, which are based on personal knowledge:

## NATURE OF THE ACTION

1.     This action seeks to remedy the deceptive and misleading business practices of the National Restaurant Association Solutions, LLC and its related entities, including those associated with and doing business as "ServSafe" ("NRAS" or "Defendant") with respect to the marketing and sales of the product known as ServSafe.

2.     ServSafe is publicly marketed as "training" or "certification" of basic hygiene and cleaning routines to employees and individuals seeking employment in the restaurant and/or

1

hospitality industry. In actuality ServSafe is effectively a valueless service or product because the monies paid by consumers like Plaintiffs for ServSafe were used by Defendants to fund and finance the National Restaurant Association's lobbying efforts aimed at diminishing workers' rights.

3.      Plaintiffs were required by their employers (who upon information and belief are members of the National Restaurant Association) to participate and pay ServSafe before being allowed to obtain employment.

4.      ServSafe on its face is presented as rudimentary training of food handling and other tasks that would otherwise and ordinarily be common knowledge or learned on the job shortly after hire.

5.      In actuality, ServSafe served as a source of revenue for "a nationwide lobbying campaign to keep [service workers'] wages from increasing."[1]

6.      For "decades", Defendants have used these ill-gotten monies for "fighting increases to the minimum wage at the federal and state levels" including by arguing for subminimum wage payments for tipped workers such as waiters, servers, bartenders, and other traditionally tipped categories of workers.

7.      Unknowingly, Plaintiffs paid monies to ServSafe, which was then funneled and siphoned off to NRAS for lobbying efforts against the interests of Plaintiffs' and similarly situated service workers.

8.      Public reports estimate that nearly $25,000,000 has been taken from employees to fund efforts to drive down their wages and suppress legislation aimed to increase wages for the lowest wage works – like those in the service and hospitality industry.

---

[1] *See* https://www.nytimes.com/2023/01/17/us/politics/restaurant-workers-wages-lobbying.html;
https://www.grubstreet.com/2023/01/national-restaurant-association-funds-efforts-to-keep-industry-pay-low.html

9.     Defendants' policy and practice of utilizing the funds paid to ServSafe to fund lobbying efforts on behalf of an advocacy group for restaurant's rights violates good business practices and the laws of various states in the United States, including New York and California.

10.    In accordance with its policy and practices, Defendants fail to alert its customers as to the true nature of the use of those funds or their relationship to lobbying efforts against the interests of customers that paid those monies (as required by their employers).

11.    Defendants failed to provide its customers with the true value of services because of instead of devoting money toward materials, instruction, training, and instructors, Defendants used proceeds for the purposes of funding their lobbying arms.

12.    The consumers, who were unwilling participants in Defendants' scheme to fund their lobbying efforts, are low-wage and often tip-reliant service employees, who "occupy a uniquely vulnerable position in our nation's employment landscape."[2]

---

[2] According to The Restaurant Opportunities Centers United, "Tipped workers occupy a uniquely vulnerable position in our nation's employment landscape." The Glass Floor, Sexual Harassment in the Restaurant Industry, (October 7, 2014), available at http://rocunited.org/wp-content/uploads/2014/10/REPORT_The-Glass-FloorSexual-Harassment-in-the-Restaurant-Industry2.pdf; *see also* U.S. Equal Employment Opportunity Commission, Select Task Force on the Study of Harassment in the Workplace (June 2016), available at https://www.eeoc.gov/eeoc/task_force/harassment/upload/report.pdf. See also Employers Steal Billions From Workers' Paychecks Each Year, Economic Policy Institute (May 10, 2017) available at https://www.epi.org/files/pdf/125116.pdf (citing a study that found that wage violations increased poverty rates amount workers by 40.6% in New York); id. at at https://www.epi.org/files/pdf/125116.pdf ("For many low-income families who suffer wage theft, the resulting loss of income forces them to rely more heavily on public assistance programs, unduly straining safety net programs and hamstringing efforts to reduce poverty."); *see also* Associations of Tipped and Untipped Service Work with Poor Mental Health in a Nationally Representative Cohort of Adolescents Followed into Adulthood, American Journal of Epidemiology (June 11, 2018) available at https://doi.org/10.1093/aje/kwy123 (proposing that workers in tipped positions are more likely to live in precarious financial circumstances and thus more likely to experience poor mental health, including depression); Twenty-Three Years and Still Waiting for Change: Why It's Time to Give Tipped Workers the Regular Minimum Wage, Economic Policy Institute, July 10, 2014, available at http://www.epi.org/publication/waiting-for-change-tipped-minum-wage/ (…"tipped workers experience a poverty rate nearly twice that of other workers" and "Due to their low wages and higher poverty levels, about 46.0 percent of tipped workers and their families rely on public benefits, compared with 35.5 percent of non-tipped workers and their families").

13.     Defendants exploited the vulnerabilities of service workers and this population of workers by having members of the National Restaurant Association thrust ServSafe upon service workers like Plaintiffs to obtain employment.

14.     Defendants have been and continue to be unjustly enriched.

15.     Accordingly, Plaintiffs brings this action against Defendants on behalf of themselves and Class Members who were required to purchase the ServSafe product during the applicable statute of limitations period (the "Class Period").

16.     Plaintiffs seek for themselves and Class Members recoupment of lost monies, penalties, interest, damages, attorney's fees, costs, and other economic harm – along with declaratory and injunctive relief to prevent Defendants' acts from continuing in the future.

17.     Plaintiffs also seek a written informed notice to all customers in advance of their purchases and the ability for customers to select other service providers for the certification.

18.     Plaintiffs also seeks to stop Defendants' use of their monies for lobbying efforts against service workers.

## **FACTS**

19.     Defendant NRAS is one of the corporate entities associated with ServSafe and one of the entities associated with the "National Restaurant Association" as a brand that operates out of various corporate entities acting on behalf of its members to advocate for weaker labor protections for workers and advocates for stopping minimum wage increases.

20.     Defendant NRAS offers an online-safety course commonly known as "ServSafe", which is commonly presented by a member(s) of the National Restaurant Association or those with a close relationship to it to employees of that restaurant or business.

21.     As required by the employer/restaurant, the employee pays $15 for the online "training."

22.     ServSafe never discloses to its customer (i.e., the employee of the restaurant) that part or all the payment of $15 is going to lobbying efforts to fight wage increases in the restaurant industry.

23.     Plaintiffs are in effect being forced to fund lobbying efforts against their own interests unknowingly and in violation of generally accepted business practices and other laws, including those in New York and California.

24.     Plaintiffs were employed in the state of New York and California when they were required to complete ServSafe "training", are residents of California, and were required to pay $15 to participate in ServSafe online "training."

25.     It was not disclosed to Plaintiffs that their payments were going towards a lobbying group aimed at fighting wage increases.

26.     It was not disclosed to Plaintiffs that ServSafe was a rudimentary and cursory overview of basic hygiene and cleanliness that would be learned in the first few minutes of any actual employment – or that was learned upon having any job in the industry.

27.     ServSafe was economically valueless or worth significantly less than what it was represented as because Defendants used a significant portion of the amount Plaintiffs paid to finance and fund its lobbying and political efforts to suppress workers' rights.  Moreover, restaurant employers are required to pay employees for time training on the job.  ServSafe in essence is having employees pay for their time training.

28.     Upon information and belief, Defendants intentionally withheld this information knowing that Plaintiffs and similarly situated employees would resist or not make such payments

if they knew the true nature of ServSafe's relationship to the National Restaurant Association and its lobbying efforts.

## JURISDICTION AND VENUE

29.     Jurisdiction is proper pursuant to 28 U.S.C. § 1332(d)(2).  Plaintiffs are citizen of the State of California and Plaintiff Piaget performed work in New York.

30.     Plaintiff Piaget conducted the online ServSafe "training" in New York during her employment within this District at Galli Restaurant at 45 Mercer St., New York, NY.

31.     Plaintiff Ascensio conducted the online ServSafe "training" in New York as part of her employment with Gotham Hall and Jit Jat Jo.

32.     Plaintiff Ortega conducted the online ServSafe "training" in New York City as part of his employment with Jit Jat Jo in or around August 2020.

33.     Plaintiff Gallagher and Plaintiff Piaget were required to conduct ServSafe training in California in 2022 as part of their employment as Soho House West Hollywood and TrexLA.

34.     Defendant National Restaurant Association Solutions LLC is a corporation with its principal place of business in Illinois but is not registered with the New York State Department of State despite conducting business in New York and in this district.

35.     Defendant National Restaurant Association is an unincorporated corporate entity with a principal place of business in Illinois and controls various other corporate entities that are not known to Plaintiffs at this time.

36.      Defendants, individually and collectively, operate under the labels of "National Restaurant Association" and "ServSafe" and control the corporate entities associated with the same.

37.     Upon information and belief, the amount in controversy is more than $5,000,000, exclusive of interests and costs.

38.     This Court has personal jurisdiction over Defendants because Defendants conduct and transacts business in the State of New York, contracts to supply services within the State of New York, have registered members in New York, and supplies goods and services within the State of New York.

39.     Venue is proper because Plaintiff and a significant number of Class Members performed work in the Southern District of New York at restaurant like Galli in NYC.

40.     Plaintiff Piaget performed work in the Southern District of New York as training required for her employment at Galli in NYC.

**PARTIES**

**Plaintiffs**

41.     Plaintiff Sean Gallagher is an individual consumer who was employed in California in the hospitality and restaurant industry, was required to pay monies to ServSafe as part of his employment in California and is a resident of California.

42.     During 2016 through 2022, Plaintiff Gallagher was required by his employers, including TrexLA, to pay money to and attend "training" with ServSafe.

43.     Neither Defendants, ServSafe, or his employer disclosed to Plaintiff Gallagher that ServSafe was a lobbying and fundraising arm of the National Restaurant Association and that it was engaged in ongoing attempts to suppress worker's wages and legislation aimed at protecting workers' rights – including those in the service and hospitality industry.

44.     Plaintiff Gallagher paid $15 for ServSafe online "training."

45.     After making such payments, Plaintiff received rudimentary and superficial information about cleanliness and hygiene that he had garnered in his numerous years in the restaurant and hospitality industry.

46.     In fact, even if Plaintiff Gallagher did not have prior knowledge based on his work experience in the industry he could have learned the ServSafe instructions through a few minutes of on-the-job-training.

47.     It was unclear to Plaintiff Gallagher why he was required to pay for such basic training out of his own pocket before he was eligible to work.

48.     Plaintiff Gallagher did not learn of ServSafe's involvement with lobby efforts via the National Restaurant Association and deceptive actions until January 17, 2023.

49.     Upon information and belief, Plaintiff's money was converted into money for fundraising for the National Restaurant Association, who then used it for lobbying and political purposes to fight wage increases for service employees in various states, including New York and California.

50.     Plaintiff Piaget Ventus is an individual consumer who was employed in New York and California during the relevant period, was required to pay monies to ServSafe as part of her employment in New York and California and is a resident of California.

51.     During 2016 through 2022, Plaintiff Ventus was required by her employers, including Galli Restaurant in NYC and Soho House West Hollywood, to pay money to and attend "training" with ServSafe.

52.     Neither Defendants, ServSafe, nor her employer disclosed to Plaintiff Ventus that ServSafe was a lobbying and fundraising arm of the National Restaurant Association and that it

was engaged in ongoing attempts to suppress worker's wages and legislation aimed at protecting workers' rights – including those in the service and hospitality industry.

53.     Plaintiff Ventus paid $15 for ServSafe online "training" on several occasions.

54.     After making such payments, Plaintiff received rudimentary and superficial information about cleanliness and hygiene that she had garnered in her numerous years in the restaurant and hospitality industry.

55.     In fact, Plaintiff Ventus had prior knowledge based on her work experience in the industry and could have learned the ServSafe instructions through a few minutes of on-the-job training.

56.     It was unclear to Plaintiff Ventus why she was required to pay for such basic training out of her own pocket before she was eligible to work.

57.     Plaintiff Ventus did not learn of ServSafe's involvement with lobby efforts via the National Restaurant Association and deceptive actions until January 17, 2023.

58.     Upon information and belief, Plaintiffs' money was converted into money for fundraising for the National Restaurant Association, who then used it for lobbying and political purposes to fight wage increases for service employees in various states, including New York and California.

59.     Plaintiff Ascensio is an individual consumer who was employed in New York during the relevant period, was required to pay monies to ServSafe as part of her employment in New York.

60.     Between approximately 2016 through 2022, Plaintiff Ascensio was required by her employers, including Gotham Hall and/or Jit Jat Jo, to pay money to and attend "training" with ServSafe.

9

61.    Neither Defendants, ServSafe, nor her employers disclosed to Plaintiff Ascensio that ServSafe was a lobbying and fundraising arm of the National Restaurant Association and that it was engaged in ongoing attempts to suppress worker's wages and legislation aimed at protecting workers' rights – including those in the service and hospitality industry.

62.    Plaintiff Ascensio paid $200 or more for ServSafe online "training" and "certifications" on several occasions.

63.    After making such payments, Plaintiff Ascensio received rudimentary and superficial information about cleanliness and hygiene that she had garnered in her numerous years in the restaurant and hospitality industry.

64.    Plaintiff Ortega is an individual consumer who was employed in New York during the relevant period, was required to pay monies to ServSafe as part of his employment in New York.

65.    In or around August 2020, Plaintiff Ortega was required by his employers, including Jit Jat Jo, to pay money to and attend "training" with ServSafe.

66.    Neither Defendants, ServSafe, nor her employer disclosed to Plaintiff Ortega that ServSafe was a lobbying and fundraising arm of the National Restaurant Association and that it was engaged in ongoing attempts to suppress worker's wages and legislation aimed at protecting workers' rights – including those in the service and hospitality industry.

67.    Plaintiff Ortega paid for ServSafe online "training" for a "food handler" on between one and three occasions via his personal debit card.

68.    After making such payments, Plaintiff Ortega received rudimentary and superficial information about cleanliness and hygiene that she had garnered in her numerous years in the restaurant and hospitality industry.

69.     Upon information and belief, Plaintiffs' money was converted into money for fundraising for the National Restaurant Association, who then used it for lobbying and political purposes to fight wage increases for service employees in various states, including New York and California.

**<u>Defendant</u>**

70.     Defendant National Restaurant Association Solutions LLC is a corporation with its principal place of business in Illinois but is not registered with the New York State Department of State despite conducting business in New York and in this district.

71.     Defendant National Restaurant Association is an unincorporated corporate entity with a principal place of business in Illinois and controls various other corporate entities that are not known to Plaintiffs at this time.

72.      Defendants, individually and collectively, operate under the labels of "National Restaurant Association" and "ServSafe" and control the corporate entities associated with the same.

73.     Defendants manufacture, market, advertise and distribute content that are accessible through services throughout the United States.

74.     Defendants created and/or authorized the policy and practice by which consumers like Plaintiffs are charged for the "ServSafe" services and product and required to pay for prior to working Defendants' restaurants.

75.     Defendants profit from such deceptive schemes, including by way of charges paid by its members' employees – who are required to use their own funds or funds from their first paycheck to fund lobbying efforts that are in opposition to their own interests.

## CLASS ALLEGATIONS

76.     Plaintiffs brings this matter on behalf of themselves and those similarly situated. As detailed at length in this Complaint, Defendants orchestrated deceptive business practices in connection with their brand "National Restaurant Association", "ServSafe", and its political goals, while deceptively obtaining funds from service workers.  Defendants' customers were uniformly impacted by and exposed to this misconduct.  Accordingly, this Complaint is uniquely situated for class-wide resolution, including injunctive and declaratory relief.

77.     The Class is defined as all consumers who purchased the ServSafe anywhere in the United States during the Class Period (the "Class").

78.     Plaintiffs also seek certification, to the extent necessary or appropriate, of a subclass of individuals who purchased the "ServSafe" product in New York, California, and other states at any time during the Class Period (the "Subclass(es)").

79.     The Class and Subclass(es) shall be referred to collectively throughout the Complaint as the Class.

80.     The Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

81.     Numerosity: Class Members are so numerous that joinder of all members is impracticable.  Plaintiffs allege that there are thousands of consumers who are Class Members described above who have been damaged by Defendants's deceptive and misleading practices and paid monies for "ServSafe" without  material disclosures.

82. <u>Commonality</u>: The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

a. Whether Defendants are responsible for the conduct alleged herein which was uniformly directed at consumers who purchased the ServSafe product and service;

b. Whether Defendants' misconduct set forth in this Complaint demonstrates that Defendants engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of its ServSafe product and services;

c. Whether Defendants provided material disclosures to Plaintiffs and similarly situated individuals or omitted material information;

d. Whether Defendants' members required their employees to pay for ServSafe;

e. Whether Defendant used funds from ServSafe to fund lobbying efforts contrary to the interests of the workers actually paying those monies;

f. Whether Defendants' actions conferred an unjust benefit upon Defendants to the detriment of Plaintiffs and Class members;

g. Whether Plaintiffs and the Class are entitled to injunctive or declaratory relief;

h. Whether Plaintiffs and the Class are entitled to money damages under the same causes of action as the other Class Members.

83. <u>Typicality</u>: Plaintiffs are members of the Class. Plaintiffs' claims are typical of the claims of each Class Member in that members of the Class were susceptible to the same deceptive,

misleading conduct and purchased the Defendants' ServSafe product and service. Plaintiffs are entitled to relief under the same causes of action as the other Class Members.

84.    Adequacy: Plaintiffs are adequate Class representative because their interests do not conflict with the interests of the Class Members they seek to represent; their consumer fraud claims are common to all members of the Class and they have a strong interest in vindicating their rights; they have retained counsel competent and experienced in complex class action litigation and they intends to vigorously prosecute this action. Plaintiffs have no interests which conflict with Class members. Class Members' interests will be fairly and adequately protected by Plaintiffs and their counsel. Defendants have acted in a manner generally applicable to the Class, making relief appropriate with respect to Plaintiffs and Class Members. The prosecution of separate actions by individual Class Members would create a risk of inconsistent and varying adjudications.

85.    The Class is properly brought and should be maintained as a class action under Rule 23(b) because a class action is superior to traditional litigation of this controversy. Pursuant to Rule 23(b)(3), common issues of law and fact predominate over any other questions affecting only individual members of the Class. The Class issues predominate over any individual issue because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendants' deceptive practices. In addition, this Class is superior to other methods for fair and efficient adjudication of this controversy because, *inter alia*:

86.    Superiority: A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

    a. The joinder of thousands of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;
    b. The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claim, thereby making it

impracticable, unduly burdensome, and expensive—if not totally impossible—to justify individual actions;

c.  When Defendant's liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

d.  This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

e.  Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action;

f.  This class action will assure uniformity of decisions among Class Members;

g.  The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation;

h.  Class Members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by single class action; and

i.  It would be desirable to concentrate in this single venue the litigation of all plaintiffs who were subject to the automatic renewal Subscriptions.

87.  Accordingly, this Class is properly brought and should be maintained as a class action under Rule 23(b)(3) because questions of law or fact common to Class Members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

## INJUNCTIVE CLASS RELIEF

88.  Rules 23(b)(1) and (2) contemplate a class action for purposes of seeking class-wide injunctive and/or declaratory relief.  Here, Defendants have engaged in conduct resulting in misleading consumers about its services, the nature of its relationship with the National Restaurant Association, its lobbying efforts, its attempts to suppress legislation supporting wage increases for the lowest wage workers and obtaining profits without providing notice to Plaintiffs and similarly situated individuals.

89.  Upon information and belief, Defendants acts will continue without protections.

90.  Upon information and belief, Defendants will continue to use funds wrongfully obtained to lobby against workers' rights without protections are sought herein.

91.    Without such protections and relief, Defendants will spend monies provided by Plaintiffs and Class Members for political purposes in opposition to the rights of workers like Plaintiffs.

92.    Since Defendants' conduct is uniformly directed at consumers in the United States, and the conduct continues presently, injunctive and/or declaratory relief on a class-wide basis is a viable and suitable solution to remedy Defendants' continuing misconduct.

93.    The Injunctive Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

a.   Numerosity: Individual joinder of the injunctive Class Members would be wholly impracticable.  Defendants' ServSafe services have been purchased by thousands of people throughout the United States;

b.   Commonality: Questions of law and fact are common to members of the Class.  Defendant's misconduct was uniformly directed at all consumers. Thus, all members of the Class have a common cause against Defendants to stop its misleading conduct through an injunction.  Since the issues presented by this injunctive Class deal exclusively with Defendants' misconduct, resolution of these questions would necessarily be common to the entire Class.  Moreover, there are common questions of law and fact inherent in the resolution of the proposed injunctive class, including, *inter alia*:

i.   Resolution of the issues presented in the 23(b)(3) class;
ii.   Whether members of the Class will continue to suffer harm by virtue of Defendants' deceptive use of ServSafe as a fundraising arm of the National Restaurant Association; and
iii.   Whether, on equitable grounds, Defendant should be prevented from continuing to deceptively obtain and use such funds pending the resolution of this action.

c.   Typicality: Plaintiffs' claims are typical of the claims of the injunctive Class because their claims arise from the same course of conduct (i.e. Defendant's deceptive and misleading practices of failing to disclose the true nature of ServSafe, its affiliations, and the nature and use of the funds for ServSafe). Plaintiffs are typical representatives of the Class because, like all members of the injunctive Class, they purchased Defendants' ServSafe services without full disclosure of all material facts.

    d. <u>Adequacy</u>: Plaintiffs will fairly and adequately represent and protect the interests of the injunctive Class. Their consumer protection claims are common to all members of the injunctive Class and they have a strong interest in vindicating their rights.  In addition, Plaintiffs and the Class are represented by counsel who is competent and experienced in both consumer protection and class action litigation.

94.    The injunctive Class is properly brought and should be maintained as a class action under Rule 23(b)(2) because Plaintiffs seek injunctive relief on behalf of the Class Members on grounds generally applicable to the entire injunctive Class. Certification under Rule 23(b)(2) is appropriate because Defendants acted or refused to act in a manner that applies generally to the injunctive Class (i.e., Defendants marketed Products using the same misleading and deceptive practices to all of the Class Members).  Any final injunctive relief or declaratory relief would benefit the entire injunctive Class as Defendant would be prevented from continuing its misleading and deceptive marketing practices and would be required to honestly disclose to consumers the nature of the contents of their Products.

95.    Plaintiffs would be subject to Defendants' continued improper use of their funds for lobbying efforts if no injunction or declaratory relief is issued.

**<u>FIRST CAUSE OF ACTION</u>**
**<u>VIOLATION OF GBL 349</u>**
**(On Behalf of Plaintiff Ventus and the New York Subclass Members)**

96.    Plaintiffs repeat and reallege each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

97.    New York General Business Law ("GBL") § 349 declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state . . ."

98.    Defendants engaged in deceptive, unfair, and unlawful trade practices in the

17

conduct of trade or commerce and furnishing of services within the state of New York, in violation of N.Y. Gen. Bus. Law § 349(a) by concealing its widespread practice of converting monies paid by Plaintiffs and Class Members into lobby efforts aimed directly at prioritizing business profits to the detriment of worker's rights and worker's wages.

99.    Defendants engaged in a pervasive deceptive scheme, whereby they omitted or failed to disclose that ServSafe was not actually a certification with any meaningful teachings but was rather a scheme to fundraise lobby efforts for the National Restaurant Association.

100.    In omitting material information regarding these transactions, Defendants knowingly and intentionally concealed material facts and breached their duty not to do so.

101.    Plaintiffs, and Class Members did not receive truthful and accurate information about ServSafe, the material taught, its relationship to the National Restaurant Association, its lobbying efforts, and its efforts to fight worker wage increases in various states.

102.    Such acts were deceptive acts or practices which were likely to mislead a reasonable consumer purchasing ServSafe's products and services. Said deceptive acts and practices are material to Plaintiffs and to workers in the restaurant and hospitality industry.

103.    The sales, marketing, and distribution of information in New York of ServSafe's services was and is a consumer-oriented act and thereby falls under the New York consumer fraud statute, N.Y. Gen. Bus. Law § 349.

104.    A causal relationship exists between Defendants' unlawful conduct and the ascertainable losses suffered by Plaintiffs and the Class, including their lost payment of monies.

105.    As a direct and proximate result of Defendants' deceptive practices, Plaintiffs and the Class all suffered actual and quantifiable injury and/or damages.

106.    Defendants' wrongful conduct caused Plaintiffs and the Class Members to suffer

an ascertainable loss by causing them to incur damages, including through money paid to Defendants that was in turn used to politically fight against the interest of those workers.

107.    Plaintiffs were not advised of the true nature of the transaction that would have allowed them to seek training on the job, training elsewhere, or request a waiver from their employer.

108.    More specifically, Plaintiffs and Class Members have suffered an actual and quantifiable loss by (1) receiving little to no value in terms of instruction, (2) the loss incurred from the money, (3) lost political influence and opportunity cost; and (4) the loss of use and enjoyment of fees paid to Defendants.

109.    Plaintiffs and other customers had no notice, actual or otherwise, of Defendants' deceptive practices and other breaches as Defendants intentionally concealed their wrongful conduct.

110.    If Plaintiffs and the Class Members had been informed about Defendants' deceptive practices, they would not have paid Defendants for the certification/training, would have sought training/certification elsewhere, would have requested a waiver, or would have requested the ability to be taught on the job.

111.    Plaintiffs and the Class Members seek relief under N.Y. Gen. Bus. Law § 349(h), including, but not limited to, actual damages, treble damages, statutory damages, injunctive relief, declaratory relief, and attorneys' fees and costs.

**SECOND CAUSE OF ACTION**
**NY AND CALIFORNIA COMMON LAW FRAUD AND MATERIAL OMISSIONS**
**(On Behalf of Plaintiff and All Class and/or New York and California Subclass Members)**

112.    Plaintiffs repeat and reallege each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

113.    Defendants omitted material information during the process by which customers like Plaintiffs paid monies to ServSafe, including the following:

   a. That ServSafe was operating as a fundraising arm of the National Restaurant Association;

   b. That ServSafe would not provide any substantive training that could not be obtained from a few minutes of on-the-job training or from any experience in the restaurant industry;

   c. That the employer of Plaintiffs and similarly situated class members was a member of the National Restaurant Association;

   d. That the customers' monies would go primarily towards lobbying and political fundraising efforts to suppress wage legislation to detriment of service workers;

   e. That the National Restaurant Association was engaged in on-going lobbying and political efforts in various states to suppress legislation and other efforts to decrease minimum wages and wages for tipped workers;

   f. That the National Restaurant Associations' goals were adverse from those of the employees of its members, including service, restaurant, and tipped workers.

114.    Plaintiffs Gallagher, Ventus, Ascensio and Ortega did not receive this information before being forced to pay for ServSafe in order to gain (or keep) employment with certain restaurant and hospitality companies including Galli (New York), Soho House of West Hollywood (California), TrexLA (California), Gotham Hall (New York), and/or Jit Jat Jo (New York).

115.     Defendants fraudulently obtained funds under the guise of providing mandatory training and instruction to service workers such as to obtain funds for lobbying and political efforts.

116.     The full scope of the fraudulent scheme is not known to Plaintiffs but given public investigations, the rudimentary nature of the instruction, and their failure to receive substantive information about ServSafe, the National Restaurant Association, and their lobbying and fundraising procedures, Plaintiffs have been harmed by such material omissions that rise to the level of fraud.

117.     Plaintiffs seek the disgorgement of monies paid to ServSafe, penalties, damages, interest, attorney's fees, costs, and expenses – as well as declaratory and injunctive relief.

**THIRD CAUSE OF ACTION**
**VIOLATION OF STATE CONSUMER PROTECTION STATUTES**
**(On Behalf of Plaintiff Gallagher, Plaintiff Ventus, and Subclass(es))**

118.     Plaintiffs repeats and reallege each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

119.     Plaintiffs, each Subclass Member, and Defendants are each a "person" as defined by California Business & Professions Code § 17506.

120.     The State of California makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the other public in this state . . . in any advertising devise . . . or in any other manner or means whatever, including over the Internet, any statement, concerning . . . personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. and Prof. Code § 17500

121.    Defendants engaged in a scheme of advertising and marketing that failed to disclose the funds would be used for lobbying and political efforts aimed at efforts directly in contravention of the interests of Plaintiffs and Class Members.

122.    Plaintiffs and Class Members have been harmed as a result of the monies they provided to Defendants having been used against them.

123.    As a result, Defendants' conduct as described above and herein is in violation of section 17500. Thus, Plaintiff and the Subclass is entitled to monetary and injunctive relief.

**FOURTH CAUSE OF ACTION**
**CALIFORNIA CONSUMER LEGAL REMEDIES ACT**
**CAL. CIV. CODE 1770(a)**

124.    Plaintiffs repeat, re-allege, and incorporate by reference, all other paragraphs of this complaint.

125.    Defendants violated the Consumer Legal Remedies Act (CLRA), section 1770(a) of the Cal. Civ. Code, by omitting and/or concealing material facts about where the proceeds from sales would be invested. Specifically, Defendants omitted and/or concealed that such would be used for lobbying and political efforts aimed at efforts directly in contravention of the interests of Plaintiffs and Class Members.

126.    The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770(a).

127.    An omission of a fact the defendant was obligated to disclose is actionable under the CLRA. A duty to disclose exists whenever the defendant has exclusive knowledge of facts not known to the plaintiff, or the defendant actively conceals a material fact from the plaintiff.  is whether the public is likely to be deceived. Unlike some states' version of common law fraud, the

CLRA does not necessarily require an affirmative misstatement, actual reliance, or causation of specific injury or damage.

128.    Here, a consumer would be made to believe that they were being subjected to ordinary consumer practices, where monies spent on would at the very least not be weaponized against them, if not being reinvested in manners or causes that benefitted the consumer.

129.    Had Plaintiffs and Subclass members known that Defendants would invest the monies they spent to further causes that harmed the consumers, they would not have purchased Defendants' service.

130.    Defendants' failure to disclose these facts is material because the Subclass Members would not otherwise be as likely to purchase their services, resulting in fewer sales for Defendants.

131.    Defendants' failure to disclose the acts and practices described above was likely to mislead reasonable consumers under the circumstances, and was willful and wanton in nature, having thus violated the CLRA.

132.    As a direct and proximate result of these unfair or deceptive practices in transactions intended to result in the sale of goods to consumers, Plaintiff and the Subclass Members suffered actual harm in lost monies and in services that were inferior (i.e. because Defendants used a portion of the proceeds not to bolster its training but to funnel and siphon money into its lobbying arm).

133.    As such, under section 1780(a) of the Civ. Code, Plaintiffs and the Subclass Members seek actual damages, punitive damages, injunctive relief, and such other relief which the Court considers appropriate.

134.    Defendants' conduct is ongoing. Plaintiffs and Subclass members are entitled to declaratory and injunctive relief to prevent future fraudulently induced purchases.

**THIRD CAUSE OF ACTION**
**VIOLATION OF STATE CONSUMER PROTECTION STATUTES**
**(On Behalf of Plaintiffs and Subclass(es))**

135.    Plaintiffs repeats and reallege each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

136.    Plaintiffs and Class Members have been injured as a result of Defendants' violations of the following state consumer protection statutes, which also provide a basis for redress to Plaintiffs and Class Members based on Defendants' fraudulent, deceptive, unfair and unconscionable acts, practices and conduct.

137.    Defendants' conduct as alleged herein violates the consumer protection, unfair trade practices and deceptive act laws of each of the following jurisdictions:

 a.  **Connecticut:**  Defendant's practices were and are in violation of Connecticut's Gen. Stat. § 42, *et seq.*

 b.  **Delaware:**  Defendant's practices were and are in violation of Delaware's Consumer Fraud Act, Del. Code Ann. tit. 6, § 2511, *et seq.* and the Deceptive Trade Practices Act, Del. Code Ann. tit. 6, § 2531, *et seq.*

 c.  **District of Columbia:**  Defendant's practices were and are in violation of the District of Columbia's Consumer Protection Act, D.C. Code § 28-3901, *et seq.*

 d.  **Hawaii:**  Defendant's practices were and are in violation of the Hawaii's Uniform Deceptive Trade Practices Act, Haw. Rev. Stat. § 481-1, *et seq.*

e. **Illinois:**  Defendant's acts and practices were and are in violation of Illinois' Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505 *et seq.* and 601 *et. seq.*

f. **Oregon:**  Defendant's practices were and are in violation of Oregon's Unlawful Trade Practices law, Or. Rev. Stat. § 646, *et seq.,* including subsection 608.

g. **Utah:**  Defendant's practices were and are in violation of Utah's Service Consumer Sales Practices Act, Utah Code Ann. § 13-11-1, *et seq.*,

h. **Vermont:**  Defendant's practices were and are in violation of Vermont's Consumer Fraud Act, Vt. Stat. Ann. tit. 9 § 2454, *et seq.*

i. **And other states with consumer fraud and deceptive business statutes.**

138.   Plaintiffs were required to pay monies to ServSafe for work in California as recently as 2022.

139.   Plaintiffs were subject to the same deceptive schemes in California as detailed above.

140.   Defendants violated the aforementioned states' unfair and deceptive acts and practices laws by implementing a scheme by which a member or restaurant affiliated with the National Restaurant Association requires its employees to train through ServSafe, yet the real aim of ServSafe was to funnel money to the lobbying arm of the National Restaurant Association.

141.   As a result of Defendants' violations of the aforementioned states' unfair and deceptive practices laws, Plaintiffs and Class Members paid monies that should not be retained by Defendants.

142.   As a result of Defendants' violations, Defendants have been unjustly enriched.

143.     Pursuant to the aforementioned states' unfair and deceptive practice laws, Plaintiff and Class Members are entitled to recover compensatory damages, restitution, punitive and special damages including but not limited to treble damages, reasonable attorneys' fees and costs and other injunctive or declaratory relief as deemed appropriate or permitted pursuant to the relevant law.

**FOURTH CAUSE OF ACTION**
**NY AND CALIFORNIA COMMON LAW UNJUST ENRICHMENT**
**(On Behalf of Plaintiff and All Class Members in the Alternative)**

144.     Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

145.     Plaintiffs, on behalf of themselves and consumers brings a common law claim for unjust enrichment.

146.     Defendants' conduct violated, *inter alia*, state law by disguising "training" or obtaining a "certificate" related to food safety as a shell for fundraising for its lobbying arms.

147.     Upon information and belief, Defendants perpetrated this scheme through a complex array of corporate entities in various states under the guise of "ServSafe" and affiliated and controlled by the "National Restaurant Association" and its leadership.

148.     Defendants unlawful conduct as described in this Complaint allowed Defendant to knowingly realize substantial revenues from selling its services at the expense of, and to the detriment or impoverishment of, Plaintiffs and Class Members, and to Defendants' benefit and enrichment.

149.     Defendants violated fundamental principles of justice, equity, and good conscience.

150.     Plaintiffs and Class Members conferred significant financial benefits and paid substantial compensation to Defendants for the alleged training and certification.

151.     Such training and certification concerned basic hygiene, cleanliness, and other basis tasks that are learned within the first few moments of a job in the restaurant and hospitality industry.

152.     Under common law principles of unjust enrichment, it is inequitable for Defendants to retain the benefits conferred by Plaintiffs' and Class Members' overpayments.

153.     Plaintiffs and Class Members seek disgorgement of all profits resulting from such payments and establishing of a constructive trust ( lets discuss) from which Plaintiff and Class Members may seek restitution.

## JURY DEMAND

Plaintiffs demands a trial by jury on all issues.

**WHEREFORE**, Plaintiffs, on behalf of themselves and the Class, prays for judgment as follows:

(a) Declaring this action to be a proper class action and certifying Plaintiffs as the representative of the Class under Rule 23 of the FRCP and/or subclasses for the various claims;

(b) Entering preliminary and permanent injunctive relief against Defendants, directing Defendants to correct its practices and to comply with consumer protection statutes nationwide, including New York and California consumer protection laws, and disclose the true nature of their relationship and the use of funds paid by workers;

(c) Awarding monetary damages, including punitive, statutory, and treble damages;

(d) Awarding Plaintiffs and Class Members their costs and expenses incurred in this action, including reasonable allowance of fees for Plaintiffs' attorneys and experts, and reimbursement of Plaintiffs' expenses; and

(e) Granting such other and further relief as the Court may deem just and proper, including interest, costs, expenses, and/or attorney's fees.

Dated:  March 8, 2023
       Carle Place, New York

**LEEDS BROWN LAW, P.C.**

_____/s/_____
Michael A. Tompkins, Esq.
Jeffrey K. Brown, Esq.
Brett R. Cohen, Esq.
Anthony M. Alesandro, Esq.
One Old Country Road, Suite 347
Carle Place, NY 11514
516.873.9550
mtompkins@leedsbrownlaw.com
jbrown@leedsbrownlaw.com
bcohen@leedsbrownlaw.com
Aalesandro@leedsbrownlaw.com

*Counsel for Plaintiff and the Class*
